```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
  SEAN SULLIVAN,                                           :
                              Plaintiff,                   :
              -v-                                          :
                                                           :    15-CV-4023 (JPO)
                                                           :
  THE NEW YORK STATE UNIFIED COURT                         :    OPINION AND ORDER
  SYSTEM, et al.,                                          :
                                                           :
                              Defendants.                  :
-----------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

  Plaintiff Sean Sullivan, an attorney appearing *pro se*, filed this action under 42 U.S.C. § 1983. In his Amended Complaint, Sullivan alleges that the New York state laws and policies governing service of process are unconstitutional as applied to indigent litigants in matrimonial and family court actions. On July 9, 2015, the Court issued an Order dismissing Sullivan's claims against the Office of Court Administration of the New York State Unified Court System ("OCA"). Sullivan moved for reconsideration of that Order, and the two remaining Defendants—the Honorable Janet DiFiore[1] and the Honorable Lawrence K. Marks—moved to dismiss Sullivan's Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). After full briefing of the motion to dismiss, Sullivan moved to strike the entirety of Defendants' reply brief pursuant to Federal Rule of Civil Procedure 12(f). For the reasons that follow, the motion for reconsideration is denied, the motion to dismiss is granted, and the motion to strike is denied.

---

[1] In his Amended Complaint, Sullivan asserts official capacity claims against the Honorable Jonathan Lippman, Chief Judge of the State of New York. (Dkt. No. 8.) The Honorable Janet DiFiore succeeded Chief Judge Lippman in 2016. Pursuant to Federal Rule of Civil Procedure 25(d), Chief Judge DiFiore is therefore automatically substituted as a party in this action. *See Gusler v. City of Long Beach*, No. 10-CV-2077, 2015 WL 3796328, at *1 (E.D.N.Y. June 18, 2015).

1

I.  **Background**

   A.  **Factual History**

Unless otherwise noted, the following facts are taken from the Amended Complaint (Dkt. No. 8 ("Compl.")) and from public court records. *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (noting that courts may "look to public records, including complaints filed in state court, in deciding a motion to dismiss"); *Haygood v. Local 1181-1061, Amalgamated Transit Union, AFL-CIO*, No. 14-CV-3998, 2016 WL 1255728, at *3 n.4 (E.D.N.Y. Mar. 29, 2016) ("When deciding a motion to dismiss . . . [a district court] may also review (1) documents attached to the complaint, (2) any documents incorporated in the complaint by reference, (3) documents deemed integral to the complaint, and (4) public records."). For the purposes of this motion, the Court assumes that all allegations in the Amended Complaint are true.

This case arises from family court and matrimonial proceedings in New York state court. In March 2011, Sullivan's then-wife filed a petition in New York State Family Court seeking an order directing Sullivan to make child support payments for their daughter. (Compl. ¶ 11.) The court issued a temporary order of support and, after Sullivan failed to appear, issued a final order of support in October 2011. (Compl. ¶¶ 11-12; Dkt. No. 22-12 at 2 n.4.) Sullivan filed objections to the final order, which the court dismissed because, *inter alia*, "the proper procedure for challenging an order or judgement [*sic*] entered on default" is a motion to vacate. (Dkt. No. 22-4 at 2.) Sullivan appealed the order dismissing his objections, and the Appellate Division of the Second Judicial Department (the "Second Department") dismissed his appeal. (Dkt. No. 22-5.)

Sullivan then filed a petition seeking a downward modification of his child support obligations. (*See* Dkt. No. 22-6.) The court dismissed that petition on June 8, 2012, after

Sullivan again failed to appear.  (*Id.*)  Sullivan objected to the dismissal; the court denied his objection; and Sullivan appealed to the Second Department.  (Dkt. No. 22-7.)  The Second Department dismissed the appeal on May 6, 2013, after Sullivan failed to comply with an order directing him to submit an affirmation and warning him that failure to do so would result in dismissal.  (*Id.*)

Separately, Sullivan's wife commenced a divorce action against him in New York State Supreme Court on August 4, 2011.  (Compl. ¶ 13.)  On March 13, 2013, Sullivan filed an Order to Show Cause challenging the divorce petition and seeking spousal maintenance payments.  (*Id.*)  On August 12, 2013, Sullivan appeared in Supreme Court, where the court "ordered the parties to complete a Preliminary Conference Order."  (Dkt. No. 22-9.)  Sullivan then "left the courthouse" and, when he did not return, the court issued a judgment of divorce upon default.  (*Id.*)  Sullivan appealed the judgment of divorce to the Second Department, which granted him an extension of the deadline to perfect his appeal.  (Dkt. No. 22-10.)  Sullivan ultimately failed to perfect his appeal.  It was dismissed on December 4, 2014.  (*Id.*)

Sullivan has also filed at least two Article 78 petitions related to the aforementioned actions.  In April 2012, Sullivan filed an Article 78 petition concerning his child support obligations.  (*See* Dkt. No. 22-8.)  That action was dismissed on July 13, 2013, after Sullivan failed to appear.  (*Id.*)  Sullivan also filed an Article 78 petition in December 2014 challenging the divorce and other judgments issued against him.  The Second Department dismissed Sullivan's petition on the merits on April 15, 2015.  (Dkt. No. 22-11.)

This action concerns the service of process rules governing matrimonial and family court proceedings.  Sullivan, a lawyer "who is currently indigent and homeless," asserts that "he had to spend his dwindling savings to pay process servers . . . to effectuate process of his pleadings before the Family Court."  (Compl. ¶¶ 11-12.)  He states that, at a certain point during the child

3

support proceedings, "he could no longer afford to pay process servers" and began to mail his pleadings "directly to the opposing party." (Compl. ¶ 12.) "Certain of [those directly mailed] pleadings were returned to him" or rejected by the Family Court. (*Id*.) Sullivan also alleges that, because he "did not have the financial resources to hire a process server," he "missed various deadlines for [filing] pleadings in the appellate courts of New York state in the latter part of 2013 and 2014." (Compl. ¶ 14.) He contends that, as a result of the state's service of process requirements, he was denied due process "on discrete occasions from 2013 to the present." (*Id*.)

### B.    Procedural History

Sullivan filed this action on May 14, 2015. (Dkt. No. 2.) On July 9, 2015, the Court issued an Order of Service dismissing all claims against OCA and directing the Clerk of Court to mail Sullivan forms permitting service on the remaining Defendants through the U.S. Marshals Service. (Dkt. No. 5.) The Court mailed the Order of Service to the address Sullivan provided.

Sullivan thereafter submitted a letter stating that he was unaware of the Order of Service and requesting an extension of the deadline to move for reconsideration. The Court granted Sullivan's request. (Dkt. No. 7.) Sullivan then filed an Amended Complaint and moved for reconsideration of the Order of Service insofar as it dismissed OCA.

Defendants moved to dismiss the Amended Complaint on November 16, 2015. (Dkt. No. 17.) After the parties fully briefed that motion, Sullivan moved to strike Defendants' reply brief. (Dkt. No. 25.) Defendants opposed the motion to strike on March 8, 2016. (Dkt. No. 26.)

## II.   Discussion

Courts are obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and to interpret them "to raise the strongest arguments that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation omitted). Under Second Circuit precedent, however, this rule does not apply to attorneys

representing themselves. *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[T]he degree of solicitude [afforded a pleading] may be lessened where the particular *pro se* litigant is experienced in litigation and familiar with the procedural setting presented. The ultimate extension of this reasoning is that a lawyer representing himself ordinarily receives no such solicitude at all." (citations omitted)). Given that Sullivan is an attorney, the Court assesses the three motions at issue without special solicitude to his *pro se* status.

### A.   Motion for Reconsideration

"A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (citation and internal quotation marks omitted). To prevail, the movant must demonstrate "(1) an intervening change in controlling law; (2) the availability of new evidence[;] or (3) the need to correct clear error or prevent manifest injustice." *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 580–81 (S.D.N.Y. 2013) (citation omitted); *see also Cioce v. Cty. of Westchester*, 128 F. App'x 181, 185 (2d Cir. 2005) ("Generally, motions for reconsideration are not granted unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." (citation and internal quotation marks omitted)).

Sullivan seeks reconsideration of the determination that his Section 1983 suit against OCA is barred by the Eleventh Amendment. (*See* Dkt. No. 5 at 2.) He argues that his claims against OCA may proceed because he seeks injunctive and declaratory relief rather than money damages. Sullivan also cites a case in which a litigant sued OCA to challenge the constitutionality of regulations promulgated by the Chief Judge of New York State. (Dkt. No. 10 at 6 (citing *Kramer v. Lippman*, 478 F.3d 502 (2d Cir. 2007))).

The Eleventh Amendment applies here whether or not it was addressed in another case. As the Court explained in its Order of Service, OCA is effectively an "arm[] of [New York] state." (Dkt. No. 5 at 2 (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)).). Because New York has not waived its Eleventh Amendment immunity, and Congress did not abrogate the states' immunity in enacting Section 1983, OCA is immune from suit regardless of the relief Sullivan seeks. *Feng Li v. Rabner*, -- F. App'x ---, 2016 WL 1055380, at *1 (2d Cir. Mar. 17, 2016) ("[Plaintiff] argues that the defendants are not immune from suit under the Eleventh Amendment because he sought prospective relief. As to the State and its courts, the Eleventh Amendment bars a suit "regardless of the nature of the relief sought." (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984))). Sullivan has not presented any argument that disturbs this conclusion. Accordingly, his motion for reconsideration is denied.

### B.    Motion to Dismiss

Defendants move to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district courts lacks the statutory or constitutional power to adjudicate it." *Marakova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss under Rule 12(b)(1), the court "must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "[T]he party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists . . . ." *Germain v. M&T Bank Corp.*, 111 F. Supp. 3d 506, 518 (S.D.N.Y. 2015) (alteration and citation omitted); *see also Aurecchione v. Schoolman Transp. Sys., Inc.*,

426 F.3d 635, 638 (2d Cir. 2005) ("The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.")

To survive a motion to dismiss under Rule 12(b)(6), in contrast, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 128 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Iqbal*, 556 U.S. at 678). In determining whether this standard is satisfied, courts assume that all "factual allegations contained in the complaint" are true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all inferences in the light most favorable to the non-moving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (Sotomayor, J.) (citation omitted).

Defendants move to dismiss on several grounds. They argue, first, that Sullivan's suit is barred by the *Rooker-Feldman* doctrine, and second, that the Court should abstain from hearing the case under the *Younger* doctrine. *See Peters v. Neroni*, 598 F. App'x 797, 798 (2d. Cir. 2015) (discussing *Younger* abstention); *Hoblock v. Albany Cty. Bd. of Elections*, 422 F. 3d 77, 83-92 (2d Cir. 2005) (examining the *Rooker-Feldman* doctrine). Defendants also argue that Sullivan lacks standing because they are not sufficiently connected to enforcement of the service of process laws. Finally, they contend that Sullivan has failed to state a claim.

1. **Abstention**

The Court begins with abstention. *See In re Facebook, Inc., IPO Sec. and Derivative Litig.*, 922 F. Supp. 2d 445, 453-54 (S.D.N.Y. 2013) ("[T]he Supreme Court [has] declined to prescribe a strict mandatory 'sequencing of jurisdictional issues.'" (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999))). "The *Rooker–Feldman* doctrine provides that

federal district courts lack subject-matter jurisdiction to review 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Fernandez v. Turetsky*, , -- F. App'x ---, 2016 WL 1459244, at *1 (2d Cir. Apr. 14, 2016) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005)). Under Second Circuit precedent, the doctrine applies when four requirements are met: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by the state court judgment"; (3) "the plaintiff must invite district court review and judgment of the state court judgment"; and (4) "the state court judgment must have been rendered before the district court proceedings commenced." *Id.* (alterations, citations, and internal quotation marks omitted).

The second of these factors is a source of considerable debate. *See McKithen v. Brown*, 481 F.3d 89, 97 (2d Cir. 2007) (noting that the phrase "injury caused by a state judgment," and cases interpreting that phrase, leave its meaning "far from obvious"); *Hoblock*, 422 F.3d at 86 ("*Exxon Mobil* declares these requirements but scarcely elaborates on what they might mean."). Some district courts have concluded that the *Rooker-Feldman* doctrine bars review of due process claims that are, in effect, attempts to challenge a state court judgment. *See Bernstein v. New York*, No. 06-CV-5681, 2007 WL 438169, at *6 (S.D.N.Y. 2007) ("[Plaintiff] has attempted to present his claim as independent from his appeal of the state court . . . order by stating that he seeks only a declaratory judgment that he was denied due process in the course of, and not *as a result of*, the judicial proceedings that led to the state court judgment . . . . This is sheer sophistry."); *see also Davis v. Baldwin*, No. 12-CV-6422, 2013 WL 6877560, at *5 n.7 (S.D.N.Y. 2013), *aff'd*, 594 F. App'x 49 (2d Cir. 2015) (collecting cases); *Melnitzky v. HSBC Bank USA*, No. 06-CV-13526, 2007 WL 1159639, at *8 n.5 (S.D.N.Y. 2007).

Recently, however, the Supreme Court has reiterated that the *Rooker-Feldman* doctrine occupies "narrow ground." *Skinner v. Switzer*, 562 U.S. 521, 531 (2011) ("[T]he *Rooker-Feldman* doctrine has been construed by some federal courts to extend far beyond the contours of the *Rooker* and *Feldman* cases.  Emphasizing the narrow ground occupied by the doctrine, we clarified . . . that *Rooker–Feldman* is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers inviting district court review and rejection of the state court's judgments." (alterations, citation, and internal quotation marks omitted)); *see also Sykes v. Bank of Am.*, 723 F.3d 399, 403-04 (2d Cir. 2013) (adopting this "confined" conception of the *Rooker-Feldman* doctrine).

The wisdom of this narrow rule is clear from the implications of the broader approach: to hold that federal courts lack jurisdiction over all due process challenges to state laws, simply because those laws were applied in a state proceeding, is to dramatically limit federal jurisdiction over constitutional cases.  The Supreme Court has explicitly counseled against this expansive approach, and the Court declines to adopt it here.  *Skinner*, 562 U.S. at 532-33 ("Skinner does not challenge the adverse . . . decisions themselves; instead, he targets as unconstitutional the Texas statute they authoritatively construed. . . . [A] state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action.").

Sullivan does not seek reversal of state court judgments.  He seeks prospective relief in a challenge to the laws that govern service of process for indigent litigants in certain state court proceedings.  Put another way, Sullivan's alleged injury is denial of access to the court system, not the judgments against him.  This alleged injury *preceded* the state court judgments: Sullivan's claim arose, in theory, as soon as his access to court was denied.  *See Hoblock*, 422 F.3d at 88 ("If federal suits cannot be barred by *Rooker–Feldman* unless they complain of

9

injuries produced by state-court judgments, it follows that no federal suit that precedes a state-court judgment will be barred."). Sullivan's claim is therefore independent from the state court judgments against him, and the *Rooker-Feldman* doctrine does not deprive the Court of jurisdiction over his suit. *See Skinner*, 562 U.S. at 531 ("If a federal plaintiff presents an independent claim, it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court." (citation and internal quotation marks omitted)); *Sykes*, 723 F.3d at 404 ("[Plaintiff] does not complain of injuries caused by a state court judgment . . . . Rather, he challenges only Defendants' levying against his [Social Security] assets . . . in order to enforce the child support order—conduct which is wholly separate from the validity of the underlying order.").

*Younger* abstention presents a different set of questions. *See Younger v. Harris*, 401 U.S. 37 (1971). That doctrine requires federal courts to abstain from exercising jurisdiction in "'exceptional circumstances' involving: (1) 'ongoing state criminal prosecutions,' (2) 'certain civil enforcement proceedings,' and (3) [pending] 'civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Falco v. Justices of the Matrimonial Parts of the Sup. Ct. of Suffolk Cty.*, 805 F.3d 425, 427 (2d Cir. 2015) (quoting *Sprint Comm's, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013)). These are the only circumstances in which *Younger* abstention applies, *id.*, and unlike the *Rooker-Feldman* doctrine, *Younger* abstention is a "prudential limitation" grounded in considerations of comity rather than a "jurisdictional bar" derived from Article III of the Constitution. *Kaufman v. Kaye*, 466 F.3d 83, 88 n1. (2d Cir. 2006) (citation and internal quotation marks omitted); *see also Sprint*, 134 S. Ct. at 591.

It is undisputed that *Younger* abstention applies only where a state proceeding is ongoing. *Sprint*, 134 S. Ct. at 591; *see also Davis v. Baldwin*, 594 F. App'x 49, 51 (2d Cir. 2015). The

question is whether the proceedings at issue here are "ongoing" for the purpose of the *Younger* analysis. It is clear that Sullivan's divorce proceeding has concluded: the New York Supreme Court issued a judgment of divorce, and the Second Department dismissed Sullivan's appeal of that judgment in December 2014. (*See* Dkt. Nos. 22-9, 22-10.) *Younger* therefore does not bar adjudication of Sullivan's challenge to the laws governing service of process in divorce cases.

It is a closer question whether Sullivan's family court proceedings are pending for *Younger* purposes. Several courts outside this Circuit have concluded that the nature of child support orders—in particular, the family court's retention of jurisdiction to monitor and modify child support obligations—renders child support cases "ongoing" until a child reaches the age of majority. *See e.g.*, *Anthony v. Council*, 316 F.3d 412, 419-21 (3d Cir. 2003); *Whitehead v. D.C. Child Support Servs. Div.*, 892 F. Supp. 2d 315, 318 (D.D.C. 2012). Other courts have declined to apply *Younger* to cases involving family court proceedings. *See, e.g.*, *Sam M ex rel. Elliot v. Chafee*, 800 F. Supp. 2d 363, 379-80 (D.R.I. 2011) (concluding, in light of the remedy sought, that *Younger* did not apply to a constitutional challenge to the state's foster care system despite the fact that two plaintiffs were "still in the custody of [the relevant state agency]" and thus were "subject to the continuing jurisdiction of the Family Court"); *M.D. v. Perry*, 799 F. Supp. 2d 712, 717-18 (S.D. Tex. 2011); *Montgomery v. Montgomery*, 764 F. Supp. 2d 328, 334-35 (D.N.H. 2011) ("[Defendant's] repeated assertions . . . that the issues underlying the plaintiffs' claim here are 'part and parcel' of the issues being addressed in the Family Court, or that the Family Court is already 'dealing with' the affidavit of support—even if accurate—simply do not support *Younger* abstention," *id.* at 335). While it is not dispositive, the Court also notes that courts in this Circuit have addressed the merits of cases involving child support orders issued by New York courts. *See Sykes*, 723 F.3d at 401-04 (addressing the merits of a challenge to a New York state agency's authority to levy against plaintiff's social security benefits to enforce a child

support order entered by a New York court); *O'Brien v. Hansell*, No. 09-CV-629, 2010 WL 1371366, at *3 (E.D.N.Y. Mar. 31, 2010) (addressing the merits of a due process challenge to a New York state agency's attempt to collect arrears owed by plaintiff on his child support payments).

Defendants argue for the more expansive approach to *Younger* abstention. (Dkt. No. 18 at 15 n.7.) They contend, in essence, that federal courts are deprived of jurisdiction over any constitutional challenge to any aspect of a New York proceeding involving child support until the child at issue reaches the age of twenty-one, no matter how urgent or egregious the alleged constitutional violation, and no matter how young the child at the time that it occurred. *See* N.Y. Fam. Ct. Act § 413(1)(a). While this argument finds support in some case law, it also conflicts with the Supreme Court's recent—and very clear—instruction that *Younger* should be narrowly construed. *Sprint*, 134 S. Ct. at 591 ("[O]nly exceptional circumstances justify a federal court's refusal to decide a case in deference to the states." (citation omitted)); *see also Stahl York Ave. Co., LLC v. City of New York*, No. 14-cv-7665, 2015 WL 2445071, at *8 (S.D.N.Y. May 21, 2015) (noting that "abstention doctrines pose extraordinary and narrow exceptions" to the duty to exercise federal jurisdiction (alteration, citation, and internal quotation marks omitted)); *Galland v. Kutner*, No. 14-CV-0370, 2014 WL 5017834, at *4 n.1 (S.D.N.Y. 2014) (observing that *Sprint*, 134 S. Ct. at 584, "categorically narrowed the scope of the *Younger* abstention doctrine"); *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 408 (S.D.N.Y. 2014) ("[T]he Supreme Court has repeatedly cautioned that a federal court's 'obligation' to hear and decide a case over which it has jurisdiction is 'virtually unflagging.'" (quoting *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976))). Defendants' position also conflicts with the basic idea that child support orders become final, and therefore subject to appeal, upon entry of judgment and resolution of any objections to the family court's order. *See* N.Y. Fam. Ct. Act

§§ 439(e), 1112 (establishing the process for objections to and appeals of child support orders); *Davydova v. Sasonov*, 109 A.D.3d 955, 957 (N.Y. Ct. App. 2013) (distinguishing temporary from final child support awards); *see also Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996) (noting the "general rule" that a plaintiff need not exhaust state judicial remedies to bring a Section 1983 action in federal court).

Ultimately, Defendants propound too broad a theory of *Younger* abstention. Their view of the doctrine would deny litigants access to federal court to vindicate constitutional rights for years—and in some cases for more than two decades—simply because those rights were denied in state proceeding involving child support. Given the exceptional nature of *Younger* abstention, particularly after the Supreme Court's most recent decisions, *see Sprint*, 134 S. Ct. at 584, the Court cannot endorse this interpretation of the case law. The Court concludes that Sullivan's family court proceedings are not "ongoing" for *Younger* purposes, and accordingly, that *Younger* does not apply to his challenge to the laws governing service of process in those proceedings.

### 2. Proper Parties

Defendants also argue that they have "no involvement in any conduct that purportedly harmed Sullivan," and thus, are not proper parties to this suit. (Dkt. No. 18 at 8.) "Under *Ex parte Young*, the state officer against whom a suit is brought 'must have some connection with the enforcement of the act' that is in continued violation of federal law." *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372-73 (2d Cir. 2005) (quoting *Ex parte Young*, 209 U.S. 123, 154 (1908)). While a state official's generalized duty to "take care that the laws are faithfully executed" is insufficient to trigger *Ex parte Young*, *Warden v. Pataki*, 35 F. Supp. 2d 354, 359 (S.D.N.Y. 1999), *aff'd*, 201 F.3d 430 (2d Cir. 1999) (summary order) (citation omitted), an officer's enforcement duties need not be noted in the law at issue for the requisite connection to exist. *In re Dairy Mart Convenience Stores*, 411 F.3d at 373. Instead, "the existence of some

connection [to enforcement of the specific law at issue] . . . is the important and material fact . . . ." *Mayers v. New York Community Bancorp, Inc.*, No. 03-CV-5837, 2005 WL 2105810, at *5 (E.D.N.Y. Aug. 31, 2005) (citation omitted).

The Defendants in this suit are the Chief Judge and the Chief Administrative Judge of the Courts of New York State. These officials "oversee the administration of trial courts" and, as Sullivan notes, promulgate regulations concerning service of process. *See id.* at *6; *see* N.Y.C.P.L.R. § 2103; N.Y. Ct. Rules §§ 202.5-b to -bb. In identifying these regulations and describing Defendants' control over the service of process requirements in New York, Sullivan has plausibly alleged that Defendants have a "particular responsibility over the challenged [laws]," *Mayers*, 2005 WL 2105810, at *6 n.5 (internal quotation marks omitted), and have shown willingness to enforce them. *See Howe v. Burwell*, No. 15-cv-0006, 2015 WL 4479757, at *17 (D.Vt. July 21, 2015) (holding that the Commissioner of a state agency responsible for administration of the Vermont healthcare exchange was the proper party in a constitutional challenge to the Affordable Care Act); *Mayers*, 2005 WL 2105810, at *6 (concluding that the Chief Judge and Chief Administrative Judge were proper parties in a constitutional challenge to the New York garnishment statute). The Court therefore concludes that Defendants can be sued under *Ex parte Young*.

### 3.  Access to Courts

Defendants' final argument is that Sullivan has not plausibly alleged that he was denied access to the court system. In their reply brief, Defendants present this argument as a ground for dismissal under Rule 12(b)(6). (Dkt. No. 21 at 1-5.) At other points in their briefing papers, they also appear to suggest that Sullivan has not pleaded any injury caused by Defendants, and thus, has no standing to assert his claim. (*See* Dkt. No. 18 at 16 (questioning "the extent [to which Sullivan] has alleged any harm").)

14

Insofar as Defendants challenge Sullivan's standing, their argument fails. "The 'irreducible constitutional minimum of standing contains three elements': (1) 'the plaintiff must have suffered an injury in fact' . . . ; (2) 'there must be a causal connection between the injury and the conduct complained of; and (3) 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Courts have long recognized that denial of access to courts is a redressable constitutional injury. *Benjamin v. Fraser,* 264 F.3d 175, 185 (2d Cir. 2001); *Koutny v. Martin*, 530 F. Supp. 2d 84, 88 (D.D.C. 2007); *see also Christopher v. Harbury*, 536 U.S. 403, 413 (2002); *Blake v. Dowe*, 36 F. Supp. 3d 271, 276-77 (D. Conn. 2014) ("[T]he Supreme Court has recognized a constitutional right of access to the courts . . . [a]nd . . . the Second Circuit has recognized that the constitutional right of access to the courts is violated where government officials obstruct legitimate efforts to seek judicial redress" (alterations, citations and internal quotation marks omitted)); *cf. Anthony*, 316 F.3d at 416 (holding that plaintiffs had standing to assert a right to appointed counsel in child support hearings).

Whether a court has subject matter jurisdiction, however, is "separate from the question whether the allegations the plaintiff makes entitle him to relief." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010); *Giammatteo v. Newton*, 452 F. A'ppx 24, 29 (2d Cir. 2011) ("[T]he Supreme Court has warned that jurisdiction is not defeated by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. Rather, the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction") (alterations, citations, and internal quotation marks omitted

omitted)); *Jones v. Nassau Cty. Sheriff Dep't*, 285 F. Supp 2d 322, 324 (E.D.N.Y. 2003) (examining the distinction between Rules 12(b)(1) and 12(b)(6)).

In his Complaint, Sullivan challenges New York Civil Practice Law and Rules (CPLR) Section 2103 ("CPLR § 2103"). According to Sullivan, this statute requires submission of a notarized affidavit and service by a non-party over age eighteen. Sullivan contends that these two requirements impose an unconstitutional financial burden on all indigent litigants, and in his case, frustrated his capacity to make and defend claims in state court.

As Defendants note, there are at least three problems with this claim. First, CPLR § 2103 does not apply to most of the proceedings in which Sullivan was involved. *See* N.Y. Dom. Rel. L. § 232 (governing service in matrimonial proceedings); N.Y. Fam. Ct. Act § 427 (governing service of summons in child support proceedings); *see id.* at § 165 (noting that CPLR service rules apply only where the Family Court Act does not prescribe a method of service). Second, to the extent that CPLR § 2103 did apply in the proceedings at issue, the statute contains explicit exceptions to the requirements Sullivan challenges. *See* CPLR § 2103(a) (permitting courts to alter the requirement that a non-party over age eighteen effect service); *id.* § 2103(b) (permitting service by mail and fax); *see also Ruffin v. Lion Corp.*, 940 N.E.2d 909 (N.Y. 2010) ("We therefore reject the Appellate Division's holding that a CPLR statute defining a method of service can in no circumstance be disregarded."); *Matter of Conti v. Clyne*, 120 A.D.3d 884, 886 (N.Y. Ct. App. 2014) (noting that some New York courts have held that the failure to effect service through a non-party "is a mere irregularity which does not vitiate service" (citation and internal quotation marks omitted)). New York law also permits courts to devise alternative methods of service when personal service is "impracticable." CPLR § 308(5). The existence of these alternatives renders implausible Sullivan's assertion that CPLR 2103 denies all indigent

litigants access to matrimonial and family court proceedings. They also undermine his allegations with respect to his own court proceedings.

Third and finally, Sullivan has not identified when or how his access to courts was denied. "To succeed on an access to courts claim, a plaintiff must show that the defendant caused the plaintiff['s] injury or, put less succinctly, that the defendant took or was responsible for actions that had the actual effect of frustrating the plaintiff's effort to pursue a legal claim." *Olivia v. Town of Greece*, 630 F. App'x 43, 45 (2d Cir. 2015). Beyond identifying the multiple-year timeframe in which he was involved in divorce and child support actions, Sullivan does not state when he was prevented from serving pleadings, nor does he describe what claims or arguments he was unable to pursue as a result of the service laws. *See Christopher*, 536 U.S at 415 ("[The access-to-courts] right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court . . . . It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint . . . ."). In the absence of such factual allegations, Sullivan's claim cannot survive a motion to dismiss. In this particular case, moreover, the public record indicates that Sullivan has frequently pursued claims in New York courts, and that his claims have often been dismissed not because he failed to serve or file pleadings, but because he failed to appear.

The Court therefore grants Defendants' motion to dismiss under Rule 12(b)(6), and denies Sullivan's request for leave to amend. "Although Rule 15(a) of the Federal Rules of Procedure provides that leave to amend 'shall be freely given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). In this case, Sullivan makes only conclusory assertions, which directly conflict with the public record of his court proceedings. He also challenges CPLR § 2103 on the ground that it denies indigent litigants access to court, but

overlooks available alternative methods of service, which New York established to facilitate access to courts for, among others, indigent litigants.  *See* Siegel, N.Y. Practice § 76 (5th ed.) (describing amendments to the service of process requirements in New York after *Boddie v. Connecticut*, 401 U.S. 371 (1971)).  Given these deficiencies in Sullivan's claim, the Court concludes that leave to amend would be futile.  *See Whitnum v. Town of Greenwich*, -- F. App'x ---, 2016 WL 2942528, at *1 (2d Cir. May 20, 2016) ("District courts have considerable discretion to deny amendment where there [is] . . . futility of amendment." (citation and internal quotation marks omitted)).

  C. **Motion to Strike**

  Finally, Sullivan moves to strike the entirety of Defendants' reply brief on the ground that it is "ethically suspect, as well as procedurally and legally defective."  (Dkt. No. 25 at 1.)  Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  It is well settled that courts should deny motions to strike material from the pleadings "unless it can be shown that no evidence in support of the allegation would be admissible."  *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 416 (S.D.N.Y. 2012) (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)).  The Second Circuit has also instructed district courts not to "tamper with the pleadings unless there is a strong reason for doing so." *Id.* (quoting *Lipsky*, 551 F.2d at 893).

  The brief at issue contains only legal arguments and references to public court records.  There is nothing in the pleading that qualifies as "immaterial, impertinent, or scandalous," Fed. R. Civ. P. 12(f), and there is no reason to strike any of its contents.  Sullivan's third motion is therefore denied.

### III. Conclusion

For the foregoing reasons, Sullivan's motion for reconsideration is DENIED, Defendants' motion to dismiss is GRANTED, and Sullivan's motion to strike Defendants' reply brief is DENIED.

The Clerk of Court is directed to close the motions at docket numbers 9, 17, and 25, and to close this case.

SO ORDERED.

Dated: June 17, 2016
New York, New York

_____
J. PAUL OETKEN
United States District Judge

*COPY MAILED TO PRO SE PARTY BY CHAMBERS*